IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | | |
|---|---|---|
| JERRY L. FIELDS, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:20cv1 |
| | ) | |
| WASHINGTON COUNTY | ) | |
| SERVICE AUTHORITY, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

Defendant Washington County Service Authority ("WCSA"), by counsel, respectfully submits this reply brief in support of its motion for summary judgment previously filed with the Court.

INTRODUCTION

Fields made one complaint of a sexual nature while employed at the WCSA: on September 4, 2018, he told General Manager Robbie Cornett that when women called the water plant and their names appeared on caller ID, Don Cole talked about he would "like to do to them." The relevant inquiry is whether Cornett terminated Fields' employment for making this complaint. Fields has no evidence to show this complaint had any bearing on Cornett's decision.

Fields' sensationalized brief is replete with bold statements without any citation to the record, misstatements of evidence, and irrelevant arguments. In an attempt to divert the Court's attention from the complete lack of evidence to support his retaliation claim, Fields endeavors to turn this case into a series of mini-trials concerning Cole's alleged harassment of WCSA Information Systems Manager Jennifer Ball and the experiences of former employees not

1

similarly situated to Fields. But Fields admits that he never reported Cole's alleged sexual harassment of Ball or any other employee to Cornett. Further, Fields admits the facts that led to Cornett's legitimate, nondiscriminatory reason for terminating Fields' employment. He concedes that he lied in his October 9 grievance when he falsely claimed that Cornett omitted Fields' reports of sexual harassment from his September 5 CCD Letter.[1] He also concedes that he was willfully insubordinate by refusing to provide Cornett any details about the unspecified allegations of sexual harassment he made on October 9. Fields' insubordination impeded the WCSA's ability to investigate those allegations.

Fields does not dispute that blatant insubordination and willful misrepresentation to the General Manager are valid bases for termination. Instead, Fields attempts to show pretext with straw man arguments, addressing false reasons for termination that were not provided by the WCSA as reasons for his termination. Fields' brief is a collection of red herrings. The WCSA is entitled to summary judgment because Fields has no evidence to genuinely dispute the legitimate reasons provided for his termination.

## ARGUMENT

**A. Jennifer Ball.**

Fields alleges Cole sexually harassed Ball and had inappropriate interactions with other, unidentified females. (*See* Pl's Resp. Brief at 2-5, 11-12.) These allegations, while disturbing, have no bearing on this case.[2] Fields claims he was terminated because he reported "sexual harassment" to Cornett. (Compl. ¶¶ 7-14.) It is undisputed, via Fields' own testimony, that the

---

[1] Cornett generated the Complaint Confirmation and Documentation Letter ("CCD Letter") dated September 5, 2018, to memorialize the statements Fields made during their September 4 meeting.
[2] Cole has since been terminated after an investigation into allegations that came to light during discovery in this case.

2

only specific complaint he ever made to Cornett of a sexual nature concerned Cole's alleged caller ID comments.  (*See* CCD Letter;[3] Fields Tr. at 88-90, 148. [4])  Fields never mentioned <u>any</u> sexually related comments or harassment other than the caller ID talk, despite several opportunities to do so.  He never mentioned any harassment of Ball to Cornett.  The caller ID comments were thoroughly investigated by Cornett and Cheek, who provided questionnaires to, and interviewed, every employee at the water plant.  (Cornett Tr. at 8-9;[5] Cheek Tr. at 31-32, 52;[6] Questionnaires[7].)  When Fields made the naked allegation of "sexual harassment towards female employees by Don Cole" in his October 9, 2018 grievance, Cornett explicitly directed Fields to provide a "complete, descriptive" list of "all acts of sexual harassment."  (Fields Oct. 9, 2018 Grievance;[8] Cornett Oct. 16, 2018 Ans. to Grievance.[9])  Fields never provided the list or any other information to substantiate his allegation.  Fields now claims the WCSA terminated him for his reports that Cole sexually harassed Ball.  Because Fields never reported Cole's alleged harassment of Ball, it is irrelevant.

**B.  The WCSA's investigation into Fields' complaints made on September 4, 2018.**

Fields' suggestion that Cornett had some ulterior motive to protect Cole and discipline Fields is simply unsupported argument by counsel.  Fields appears to argue that after he reported the alleged caller ID talk on September 4, Cornett did not interview employees at the Administration Building in an effort to shield Cole from potential allegations of misconduct.

---

[3] The CCD Letter was attached to Defendant's Memorandum in Support as ECF No. 20-5.
[4] Excerpts cited from Fields' deposition transcript are attached hereto as **Exhibit 1**.
[5] Excerpts cited from Cornett's deposition transcript are attached hereto as **Exhibit 2**.
[6] Excerpts cited from Cheek's deposition transcript are attached hereto as **Exhibit 3**.
[7] The Questionnaires were attached to Defendant's Memorandum in Support as ECF No. 20-9.
[8] Fields' October 9, 2018 grievance was attached to Defendant's Memorandum in Support as ECF No. 20-13.
[9] Cornett's October 16, 2018 letter answering Fields' grievance was attached to Defendant's Memorandum in Support as ECF No. 20-16.

Fields contends that, based solely on his report of Cole's caller ID talk in the water plant, Cornett should have assumed Cole was sexually harassing females at the Administration Building. (Fields Tr. at 125.) That position is untenable. Cornett is not a mind reader. The Administration Building is 2.5 miles away from the water plant where Cole worked and where Cole made the alleged comments. (Fields Tr. at 48-49.) There was no reason to talk to employees in the Administration Building, who were not privy to the comments. This argument is particularly bizarre given that Cornett asked Fields directly to detail his unspecified allegations of sexual harassment, and Fields refused. If Fields had information that Cole was harassing females in the Administration Building, he should have disclosed it when tasked by the General Manager.

Furthermore, the WCSA had no reservations about disciplining Cole, and did so by issuing Cole a written warning after learning about unprofessional behavior by Cole towards subordinate employees during the investigation.[10] (Def's Ans. to Pl's INT ¶ 2.)

Also to support his theory that Cornett was out to get him, and with no citation to the record, Fields claims Cornett and Cheek

> pulled [Wayne] Smith [Fields' witness to the September 4, 2018 meeting] into the office to question him about the meeting, asking him about Fields' conduct, trying to imply he was "violent" during the meeting. They wanted Smith to write up his recollections of the meeting. Smith assured both of them Fields has in no way been "violent," although he knew that was what they wanted him to say.

(Pl's Resp. Brief at 5.) Fields misrepresents Smith's testimony.[11] There is no testimony that Cornett or Cheek "pulled Smith into the office," or that they pressured him to say Fields was violent or that they "wanted him to say" Fields was violent. Cornett did *ask* Smith whether

---

[10] The caller ID talk, however, was not corroborated by any employee. (Def's Ans. to Pl's INT ¶2, attached to Def's Mem. in Supp. as ECF No. 20-3.)

[11] This is one of many statements in Fields' "Facts" section that either has no citation to the record or misstates the record.

4

Fields was hostile, (Smith Tr. at 32-33),[12] presumably because Fields made a litany of complaints describing conflicts with Cole, including that Cole "got in his face." (CCD Letter; Fields Tr. at 86-87.) Fields testified he interpreted Cole's behavior as an "act of aggression." (Fields Tr. at 86-87; September 13, 2018 Text Messages[13].) Cornett sought to avoid an altercation between the two employees, which is precisely why he placed both Fields and Cole on paid leave during the investigation into Fields' complaints. (Def's Ans. to Pl's INT ¶ 2.)

Fields also blatantly mischaracterizes evidence when he states:

It is apparent from Cornett's September 5, 2018, letter to plaintiff, paragraph three, bullet #3, that the first thing Cornett did after meeting with Plaintiff (and Smith, as a witness) was to go to Cole, who apparently responded with an attack against Plaintiff, in which he falsely claimed to Cornet [sic] that Fields did not pull his weight with regard to being on call/overtime.

(Pl's Resp. Brief at 6.) This is false. Cornett did not "go to Cole" after the September 4 meeting. Indeed, the record actually reflects that Cornett's sources of the statement (that Fields did not pull his weight) was Fields, not Cole. The September 5, 2018 letter (referenced as the "CCD Letter" in Defendant's Memorandum) is a letter documenting Fields' complaints to Cornett during the September 4 meeting.[14] "Bullet #3" references *Fields' statement* to Cornett on September 4 that Cole believed Fields "d[id] not pull [his] weight." (CCD Letter.) Cornett did not obtain this statement from Cole; he obtained it from Fields. Bullet #3 was taken verbatim from Smith's signed statement recounting what Fields reported to Cornett in the September 4 meeting. (Smith Confirmation Letter)[15] and confirmed again by text message from Fields.

---

[12] Excerpts cited from Smith's deposition transcript are attached hereto as **Exhibit 4**.
[13] The September 13, 2018 Text Messages were attached to Defendant's Memorandum in Support as ECF No. 20-7.
[14] Cornett prepared the leave with pay notice and it was Cheek (Cole's immediate supervisor) who spoke to Cole; not Cornett.
[15] The Smith Confirmation Letter was attached to Defendant's Memorandum in Support as ECF No. 20-6.

Fields' next claim, that the questionnaires are "merely further evidence of additional attempts to create pretext," is likewise unfounded.  The questionnaires were drafted directly from Fields' own complaints against Cole on September 4, in an effort to investigate the complaints. (Cornett Tr. at 8-9.)  In the course of the investigation, Fields' coworkers voluntarily reported misconduct by Fields.  (*See* Def's Ans. to Pl's INT ¶ 2; Cheek Tr. at 31-32; Cornett Tr. at 46; Oct. 2, 2018 Cole Disciplinary Draft.[16])  There is no evidence to the contrary.

As discussed, the WCSA placed both Cole and Fields on paid leave and investigated each of Fields' complaints with all employees at the water plant.  (*See* Cheek Tr. at 23-24.)  Fields has no evidence to support his argument that Cornett disciplined Fields because he was trying to protect Cole.  Cornett investigated all of Fields' claims, discovered misbehavior by both Cole and Fields, and issued written warnings to both employees.

Even assuming, *arguendo*, that Fields had some evidence beyond pure speculation to support his argument that Cornett targeted him to protect Cole, Fields has no evidence Cornett targeted him because of the one complaint Fields made of a sexual nature, as opposed to the host of other non-sexual complaints Fields made about Cole on September 4.  Fields cannot establish but-for causation.  *See Villa v. CavaMezze Grill, LLC*, 858 F.3d 896, 900-01 (4th Cir. 2017) (finding that a plaintiff's Title VII retaliation claim fails if he cannot offer evidence to prove the adverse employment action resulted from retaliatory animus as opposed to some other reason).

**C.  Fields' claims of pretext.**

Fields claims he was terminated for "not being available enough/working enough overtime," and then argues it was pretext because his overtime hours were average for water plant employees.  (Pl's Resp. Brief at 7.)  Fields also claims he was terminated for referring to

---

[16] The October 2, 2018 Cole Disciplinary Draft is attached hereto as **Exhibit 5**.

another employee as a "damn Yankee," and argues it was pretext because "[e]veryone at the plant knew these remarks were all in fun" and nobody else was disciplined. (*Id.* at 8.) Again, Fields misstates the record. These issues had nothing to do with Fields' termination, and were not referenced in Fields' Termination Letter.[17] (*See* Cornett Tr. at 44-45; Termination Letter.) These were two of the reasons Cornett issued Fields a written warning on October 4, 2018. (*See* Oct. 4, 2018 Written Warning.)[18] Moreover, Fields did not dispute the basids for the written warning. [19] (Fields Tr. at 126-27; *see* Fields Oct. 9, 2018 Grievance.[20])

In addition, Fields implies Cornett retaliated against other employees (Wayne Smith and Mark Osborne) who brought complaints to management and thus Cornett must have retaliated against Fields in this case. (Pl's Resp. Brief at 4, 10.) Fields attempts to put the WCSA on trial against third-party former employees who were not similarly situated to Fields in the slightest. There is no evidence these former employees ever complained of sexual harassment or anything remotely similar, and Fields neglected to discover any records related to these individuals' separation from the WCSA.[21] *See Tate v. Dravo Corp.*, 623 F. Supp. 1090, 1099 (W.D.N.C.

---

[17] Likewise, Fields' performance reviews, which were average (*see* Fields Performance Evaluations, attached hereto as **Exhibit 6**), had no bearing on his termination. (*See* Termination Letter, attached to Defendant's Memorandum in Support as ECF No. 20-2.) Contrary to Fields' statement, the WCSA never offered poor performance as a basis for termination.

[18] Fields October 4, 2018 Written Warning was attached to Defendant's Memorandum in Support as ECF No. 20-12.

[19] And Fields was disciplined for not responding to phone calls to cover shifts – not his overtime hours. (Oct. 4, 2018 Written Warning.) Further, there is no evidence Cornett had knowledge that other employees also said "damn Yankee," nor was that the only vulgar language used by Fields that was reported to Cornett. (*See* Oct. 2, 2018 Cole Disciplinary Draft) (compiling the reports from water plant employees about Fields during the investigation into Fields' complaints against Cole).

[20] Fields' October 9, 2018 Grievance was attached to Defendant's Memorandum in Support as ECF No. 20-13.

[21] Osborne was terminated and Smith resigned. Neither of these employees ever made complaints of a sexual nature, nor did their separation from the WCSA have anything to do with complaining to management. Both of these employees had performance issues. (*See* Cornett Tr.

7

1985) (finding the testimony of seven other black employees irrelevant to the black plaintiff's Title VII case because "[n]one of the[] other employees was similarly situated to the Plaintiff"). Again, Fields makes no attempt to cite to the record because there is no evidence to support his argument. The Court should not entertain Fields' disjointed attempt to turn the case at bar into an investigation into whether former employees' separations from the WCSA were justified from Fields' perspective. *See Majure v. Primland, Ltd.*, 2018 U.S. Dist. LEXIS 116597, at *15-16 (W.D. Va. Jul. 13, 2018) ("When the question at issue is whether the decision maker acted with discriminatory animus, only the perception of the decision maker is relevant to the question."); *DeJarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir. 1998) (finding courts in Title VII cases do not "decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination").

### D.  The WCSA's legitimate, non-discriminatory reasons for terminating Fields.

Cornett terminated Fields for two distinct reasons, which are clearly stated in pages 2 and 3 of the Termination Letter. The first reason pertained to Fields' willful misrepresentation:

> [1] I [Cornett] find that you [Fields] made a knowingly false and materially misleading statement when you wrote [in Fields' October 9, 2018 grievance] that "nowhere in the list [in the CCD Letter] is mentioned the reports of acts of sexual harassment towards female employees by Don Cole that I made during the September 4 meeting."

(Termination Letter at 2-3.) It is undisputed that the only report Fields made on September 4 of a sexual nature was the report of caller ID talk. That *was* included in the CCD Letter. As Fields admitted in his deposition, he never reported any other acts of a sexual nature by Cole or any other behavior that could constitute sexual harassment on September 4 or at any other time.

---

at 24-31.) These employees' records were not pursued in discovery by Fields, presumably because these individuals' employment is irrelevant to Fields' claim.

(Termination Letter at 2; Fields Tr. at 122-125.)  So, Fields' statement that the CCD Letter did not "mention[] the reports of acts of sexual harassment towards female employees by Don Cole that [he] made during the September 4 meeting" was false.

This willful misrepresentation—made in a grievance to the WCSA Board—could not be overlooked.  When Fields made the false statement in his October 9 grievance that Cornett had omitted material facts (acts of sexual harassment) in the September 5 CCD Letter, he was falsely reporting to Cornett's boss (the WCSA Board) that Cornett was dishonest, or at the very least, incompetent.  It was a subversive lie aimed at the heart of the administration of the Authority.

The second reason pertained to Fields' willful insubordination:

> [2] I [Cornett] also find that you knowingly and willfully failed to comply with a directive I gave you on October 16, 2018 [to provide a "complete, descriptive and signed list of any and all 'acts of sexual harassment towards female employees by Don Cole'"], even though you had time to do so.  Instead of complying, you wrote that you would not "address" the matter.

(Termination Letter at 3.)  Fields conceded he "disobeyed" Cornett by not providing the requested list, and has never "provided a list to [] Cornett documenting acts of sexual harassment by Don Cole."  (Fields Tr. at 148.)

This too, was a serious act of insubordination.  As Cornett stated in the Termination Letter, because the WCSA is committed to maintaining a work environment free from sexual harassment, it is imperative for the WCSA to be "able to promptly investigate any and all reports [of sexual harassment] receive[d], and, where appropriate, take action."  (Termination Letter at 2.)  In order to take appropriate action, the WCSA "must have a sound investigative process and [it] must ensure the integrity of that process at all steps."  (*Id.*)  Fields thwarted the investigative

process when he made allegations of sexual harassment in his October 9, 2018 grievance[22] but then unbelievably refused to provide any information concerning those allegations. In doing so, Fields undeniably frustrated the "purpose of Title VII: to root out the cancer of discrimination in the workplace." *DeMasters v. Carilion Clinic*, 796 F.3d 409, 418 (4th Cir. 2015) (internal quotations and citations omitted). An employee making a Title VII complaint "is not thereby insulated from the consequences of insubordination." *Ziskie v. Mineta*, 547 F.3d 220, 229 (4th Cir. 2008).

With no evidence to rebut these legitimate bases for termination, Fields argues temporal proximity alone can establish but-for causation. (Pl's Resp. Brief at 14) (citing *Phillips v. Pacificorp*, 304 F. App'x 527 (9th Cir. 2008). Fields is incorrect. To be sure, if the temporal proximity between a plaintiff's protected activity and adverse employment action is "very close," it can establish a "prima facie case of retaliation." *Shields v. Fed. Express Corp.*, 120 F. App'x 956, 963 (4th Cir. 2005) (citing *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)). However, once the defendant produces a legitimate, non-discriminatory reason for its adverse employment action, temporal proximity alone is insufficient for a plaintiff to carry his ultimate burden. *Kwan v. Andalex Grp., LLC*, 737 F.3d 834, 847 (2d Cir. 2013) ("Temporal proximity alone is insufficient to defeat summary judgment at the pretext stage.") Accordingly, even assuming Fields' termination was "very close" to when he complained to Cornett about Cole's alleged caller ID talk or unspecified "sexual harassment," he cannot rely on temporal proximity to show that the WCSA's legitimate bases for termination were false or that discrimination was

---

[22] Contrary to Fields' statement on page 6 of his Brief, the WCSA Board has discretion to decide who it wants to hear from if an employee's grievance appeal progresses to the final stage in the grievance process. (Cornett Tr. at 32.) Only Fields' grievance has ever proceeded to that stage. (*Id.*)

the real reason. Because Fields has no evidence in the record to show the WCSA's proffered reasons for termination were false or that discrimination was the real reason, the WCSA is entitled to summary judgment.

## CONCLUSION

For the foregoing reasons, and for the reasons provided in Defendant's Memorandum in Support (ECF No. 20), Defendant Washington County Service Authority respectfully requests that the Court grant summary judgment in its favor and dismiss this case with prejudice.

WASHINGTON COUNTY
SERVICE AUTHORITY

By: /s/ Julian F. Harf
      Of Counsel

Jeremy E. Carroll (VSB # 41331)
Julian F. Harf (VSB # 90775)
GUYNN, WADDELL, CARROLL & LOCKABY, P.C.
415 S. College Ave.
Salem, Virginia 24153
Telephone: 540-387-2320
Facsimile: 540-389-2350
jeremyc@guynnwaddell.com
julianf@guynnwaddell.com
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of February, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to Hilary K. Johnson, counsel of record.

/s/ Julian F. Harf
Julian F. Harf
