## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ABINGDON DIVISION

| | | |
|---|---|---|
| **JERRY L. FIELDS, JR.,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:20CV00001 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **WASHINGTON COUNTY** | ) | By:  James P. Jones |
| **SERVICE AUTHORITY,** | ) | United States District Judge |
| | ) | |
| Defendant. | ) | |

*Hilary K. Johnson*, Hilary K. Johnson, *P.C., Abingdon, Virginia, for Plaintiff; Jeremy E. Carroll and Julian F. Harf,* Guynn, Waddell, Carroll & Lockaby, *P.C., Salem, Virginia, for Defendant.*

In this Title VII retaliation lawsuit, the plaintiff, a former employee at a public utility, claims that he was fired for reporting his supervisor's sexual misconduct. The defendant employer has moved for summary judgment and provided non-retaliatory reasons for the plaintiff's termination, but proceeding under the *McDonnell Douglas* burden-shifting framework, I find that the plaintiff has produced sufficient record evidence to state a prima facie claim and create a genuine dispute about whether the employer's proffered reasons were pretextual.  I will therefore deny the Motion for Summary Judgment.

I.

A.

The relevant facts are largely uncontested.  The following facts taken from the summary judgment record are either undisputed, or where disputed are presented in a light most favorable to the nonmoving party.

Washington County Service Authority ("WCSA") is a water and sewer utility provider.  Plaintiff Jerry Fields, Jr. worked as a plant operator at WCSA's water plant from 2004 until October 2018.  He tested the county's water samples among performing other duties.  Fields reported his supervisor Don Cole for sexual misconduct, verbal abuse, and other inappropriate behavior.  During the relevant timeframe, Cole's uncle served on the WCSA Board of Commissioners.  The plaintiff claims that WCSA fired him for reporting Cole's sexual misconduct.

On September 4, 2018, Fields reported Cole's conduct to Robbie Cornett, the general manager of WCSA.  Fields' coworker, Wayne Smith, witnessed the conversation between Fields and Cornett.  Fields reported that Cole called the plaintiff and other employees too stupid to do their jobs; threatened to fire or write up the plaintiff for not answering requests to cover other employees' shifts during his time off; told the plaintiff that he did not pull his weight; and had gotten in the plaintiff's face to intimidate him.  Fields told Cornett that Cole's intimidation had caused him to become ill while driving to work one day.  Most notably, Fields

reported that when women from WCSA's Administration Building would call the water plant and when their names would appear on the phone's caller-ID, Cole would tell Fields what sexual acts that he would like to perform on them.

Cornett itemized Fields' complaints in a Complaint Confirmation and Documentation ("CCD") letter dated September 5, 2018. Cornett gave Fields the chance to verify that the letter completely and accurately listed his allegations. After making one slight correction to clarify his claim regarding Cole getting in his face, Fields confirmed in a text message to Cornett on September 11, 2018, that the CCD letter was otherwise accurate and complete. Wayne Smith, who had been a witness, also confirmed it.

Cornett investigated the plaintiff's allegations of Cole's misconduct, and placed both Fields and Cole on paid administrative leave pending the investigation. On September 14, 2018, Cornett and WCSA manager Dave Cheek interviewed all eight employees at the water plant which included only one woman. Mem. Supp. Mot. Summ. J. Ex. 10, Cheek Dep. 29, ECF No. 20-10. During the interviews, Cole and Cheek requested the employees to complete a questionnaire asking if they had ever seen Cole take actions or make statements as the plaintiff claimed. Those employees' responses confirmed some of the plaintiff's allegations, namely that some had heard Cole call Fields stupid, Cole had said that Fields didn't pull his weight, and that Fields had reported becoming sick while driving to work. Mark

Osborne, a WCSA employee who worked with Fields and Cole, further substantiated Fields' claims by providing a text message in which Cole stated that Fields was too stupid to do his job.  Although no employee said that they had heard Cole make comments about women who called from the Administration Building, Cornett and Cheek never interviewed anyone, particularly women, who worked in that building. Nevertheless, because the employees corroborated at least some of Fields' allegations, on October 3, 2018, Cheek issued a written warning to Cole for being aggressive and belittling staff.

The next day, October 4, 2018, WCSA also issued Fields a written warning because while investigating Cole's misconduct several employees informed Cornett and Cheek that Fields had likewise engaged in prohibited conduct.  That warning stated that Fields had violated Section 16.4 of the WCSA Personnel Policies and Procedures Manual prohibiting rude, discourteous, and unprofessional conduct. Specifically, employees had reported that he called a coworker from Michigan a "damn Yankee" and intimidated other coworkers by keeping notes on their behavior. *Id*. at Ex. 12, Warning Letter, ECF No. 20-12.  The written warning also cited Fields for violating Section 8.3 of the WCSA Personnel Policies and Procedures Manual which requires employees to be on call and work overtime as required.  Regarding this violation, several employees reported that Fields had not answered their calls requesting that he cover their shifts.

While disputing the findings of the written warning, Fields made a false statement and engaged in insubordination — the reasons which WCSA has posited for terminating him. The plaintiff wrote a grievance letter dated October 9, 2018, to the WCSA Board of Commissioners to challenge his written warning. In that letter, the plaintiff stated for the first time that Cornett's September 5, 2018, CCD letter was incomplete because "[n]owhere in the list [of complaints] is mentioned the reports of acts of sexual harassment towards female employees by Don Cole that I made during the September 4, 2018, meeting." *Id*. at Ex. 13, Grievance Letter, ECF No. 20-13. It is undisputed that this statement was false. The plaintiff later testified in his deposition that he did not allege any other instances of sexual misconduct against Cole at the September 4 meeting besides the caller-ID comments which were included in the CCD letter. *Id*. at Ex. 1, Fields Dep. 123, ECF No. 20-1. Cornett responded to Fields' grievance letter the next day and requested that he provide a complete list and details of additional instances of Cole's sexual misconduct which he purportedly relayed on September 4. However, Fields declined to do so. Fields later conceded at his deposition that he disobeyed a superior's directive by refusing Cornett's request. *Id*. at 148. Fields was thereafter fired on October 23, 2018, and a letter of termination which followed two days later cited this false statement and insubordination as reasons for firing him. *Id*. at Ex. 2, Termination Letter, ECF No. 20-2.

Two other WCSA employees who were involved in the investigation of Cole's misconduct were also terminated or resigned. Mark Osborne, who produced Cole's demeaning text messages, was terminated for performance issues according to WCSA. Wayne Smith, who had sat in as a witness to the September 4 meeting, resigned.

## B.

Fields asserts a retaliation claim against WCSA under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-3. The plaintiff has adduced evidence during discovery which he claims supports inferring that WCSA fired him for reporting Cole's sexual misconduct. Specifically, the plaintiff contends that his overtime records indicate that the written warning for insufficient overtime lacked merit. Moreover, deposition testimony showed that Cornett and Cheek's investigation was flawed and curiously narrow in scope, as they failed to interview witnesses and victims of Cole's sexual misconduct. Finally, depositions revealed that WCSA employees feared that they would be fired or forced to resign if they spoke out, particularly against employees who were related to members of the Board.

The plaintiff claims that WCSA's written warning, which it gave him after he accused Cole of sexual harassment, was unwarranted and evidences intervening retaliatory intent before his ultimate termination a few weeks later. The plaintiff was cited because he demeaned and intimidated his coworkers, failed to be on-call to

work overtime, and did not cover the average amount of shifts as others in his department as required by the WCSA Personnel Policies and Procedures Manual and his job description.  Mem. Supp. Mot. Summ. J. Ex. 16, Answers to Grievance 2, ECF No. 20-16.  The plaintiff counters that the citation lacks merit and evidences retaliatory intent because he is "ranked right in the middle" of overtime hours compared to other plant employees, he called his coworker a "damn Yankee" jokingly, and other employees who worked less overtime than him and also used the nickname were not disciplined.  Resp. Br. Mot. Summ. J. 7–8, ECF No. 24.

Discovery also revealed that Cornett and Cheek's insular investigation failed to discover that Cole's caller-ID comments were part of a larger pattern of sexual misconduct.  Cornett falsely told the plaintiff that Cornett would speak with the women at the Administration Building about whom Cole had reportedly made sexual comments.  Fields Dep. 122, ECF No. 20-1.  But Cornett and Cheek testified that their investigation "only . . . included . . . the guys that worked for [Cole] at the plant," and that they "did not question the women in the office" building.  Resp. Br. Mot. Summ. J. Ex., Cheek Dep. 58, ECF No. 31.  Jennifer Ball, a woman who worked at the Administration Building and who Cornett and Cheek declined to interview, testified that "[e]verybody kind of knew" about Cole's harassment, "[a]ll the women talked about it," and it was "common knowledge."  *Id*. at Ex., Ball Dep. 9, ECF No. 29.

Ball also testified that Cole had repeatedly sexually harassed her and other women employees at the Administration Building whom Cornett and Cheek declined to interview. For instance, Cole had told Ball that she was nothing but "eyeballs and pussy." *Id*. at 7. Ball stated that Cole had "tried to pick [her] up around the waist," as the two were walking outside at work and she responded, "That's not something we do, please don't." *Id*. at 8. On another occasion Cole "tried to put his hand over the top of [Ball's] on the mouse" while she was working on a computer. *Id*. Ball "just said no, and turned and walked out." *Id*. In another instance, Cole "tried to put his hands on [her] shoulders," and Ball "moved them." *Id*. Cole also made comments about the other women employees that he "could look in their eyes all day long," and commented that they "would have a nice rack." *Id*. at 7. The plaintiff similarly testified that Cole would frequently "touch [women employees] on the small of their backs," and "rub their shoulders at board meetings in Robbie [Cornett]'s presence." Resp. Br. Mot. Summ. J. Ex., Fields Dep. 170–71, ECF No. 28.

Ball further testified about her fear that WCSA would retaliate against her if she spoke out against Cole. Ball stated that it was widely known at WCSA that "[i]f you say anything you get wrote up or you get terminated." Ball Dep. 10, ECF No. 29. She was told to "be very careful who is on the board, who the family members are" and "feared [she] would not have a job" if she complained about Cole because

-8-

his uncle sat on the Board of Commissioners.  *Id*. at 9.  She feared retaliation because "there's been a lot of people lately fired or wrote up if they did" go to Cornett as the plaintiff did.  *Id*. at 10.  Specifically, she stated that the plaintiff "had went [to Cornett] with some issues" about Cole "talking about the females and being kind of pushy, . . . and [the plaintiff] no longer has a job.  Mark [Osborne] backed that up and that cost him his.  Wayne [Smith] went in with [the plaintiff] during — when he was bringing about his issues and he no longer has a job." *Id*. at 24.

## II.

WCSA claims that it terminated the plaintiff for making a "subversive lie aimed at the heart of the administration of the Authority" and being insubordinate during the grievance process.  Reply Br. Supp. Mot. Summ. J. 9, ECF No. 33.  In opposition, the plaintiff has argued that evidence revealed during discovery creates a genuine dispute about whether WCSA fired him in retaliation for blowing the whistle on Cole's sexual misconduct.  The motion has been fully briefed and is ripe for review.[1]

"Summary judgment is appropriate when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Bostic v.*

---

[1]  I will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court, and argument would not significantly aid the decisional process.

*Schaefer,* 760 F.3d 352, 370 (4th Cir. 2014); Fed. R. Civ. P. 56(a).[2]  "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party."  *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013).  "A fact is material if it might affect the outcome of the suit under the governing law."  *Id.*  I am "required to view the facts and all justifiable inferences arising therefrom in the light most favorable to the nonmoving party."  *Id.* at 312.  In doing so, I must not "weigh the evidence or make credibility determinations."  *Mercantile Peninsula Bank v. French* (*In re French),* 499 F.3d 345, 352 (4th Cir. 2007).  A genuine dispute of material fact will preclude summary judgment.  *Tolan v. Cotton,* 572 U.S. 650, 656 (2014).

### III.

Title VII of the Civil Rights Act prohibits an employer from "discriminat[ing] against any of his employees" because he has "opposed any . . . unlawful employment practice," like sexual harassment in the workplace.  42 U.S.C. § 2000e-3(a); *see Ray v. Int'l Paper Co.*, 909 F.3d 661, 666 (4th Cir. 2018) (sexual harassment is an unlawful employment practice under Title VII).

The *McDonnell Douglas* framework is a three-step burden-shifting scheme which permits plaintiffs to submit proof of a Title VII claim without direct evidence

---

[2]  I have omitted internal quotation marks, citations, and alterations throughout this opinion unless otherwise noted.

of retaliation or discrimination.  *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).  "To prevail under the *McDonnell Douglas* framework, [the plaintiff] must first establish a prima facie case."  *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 250 (4th Cir. 2015).  To make out a prima facie case of retaliation, the plaintiff must show "(1) that he engaged in a protected activity; (2) that his employer took an adverse employment action against him; and (3) that a causal connection existed between the protected activity and the asserted adverse action."  *King v. Rumsfeld*, 328 F.3d 145, 150–51 (4th Cir. 2003).  To prove causation, the plaintiff must show "that retaliation was a but-for cause of a challenged adverse employment action."  *Foster*, 787 F.3d at 252.  This means that retaliation need not be the sole cause, "in isolation," of the plaintiff's termination.  *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 217 (4th Cir. 2016).  Rather, it simply means that termination "would not have occurred" except for it.  *Id*.

"Once the prima facie case is established, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action."  *King*, 328 F.3d at 150 (emphasis omitted).  "If the employer makes this showing, the burden shifts back to the plaintiff to rebut the employer's evidence by demonstrating that the employer's purported nonretaliatory reasons were not its true reasons, but were a pretext for discrimination."  *Foster*, 787 F.3d at 250.

Here, WCSA does not dispute that the plaintiff has provided evidence to make out a prima facie claim.  Mem. Supp. Mot. Summ. J. 9, ECF No. 20.  The defendant has advanced two legitimate, non-retaliatory reasons for terminating the plaintiff, namely that he made a false statement to the Board of Commissioners and committed insubordination.  *Id*.  Thus, the burden has shifted to the plaintiff to demonstrate that these given reasons were mere pretext.  *Foster*, 787 F.3d at 250.  WCSA argues that the plaintiff has failed to show pretext as required under *McDonnell Douglass* because he has produced "no evidence to rebut the[] legitimate bases for termination." Reply Br. Supp. Mot. Summ. J. 10, ECF No. 33.  But this is just one side of the coin.  To be sure, a plaintiff cannot create a genuine dispute about pretext by failing to contradict the defendant's stated reasons without also providing evidence "sufficiently demonstrative of retaliatory intent." *Rumsfeld*, 328 F.3d at 151, 154 (4th Cir. 2003).  But a plaintiff "need not squarely rebut his employer's explanation" to create a genuine dispute about pretext. *Guessous*, 828 F.3d at 217–18.  He must only "cast sufficient doubt upon the genuineness . . . to warrant a jury's consideration of possible alternative and discriminatory motivations for the firing." *Id*. at 218.  This is consistent with the plaintiff's burden "only to show that the protected activity was a but-for cause of her termination, not that it was the sole cause." *Id*.  So "[e]ven if a jury accepted" that Field's false statement and insubordination provided cause for his termination, he can survive summary

judgment if a jury could also conclude "based on the record evidence . . . that the protected activity was the final straw that motivated [his] termination." *Id*. at 219 (plaintiff did not dispute that an absence of available work for her position provided a reason to terminate her, but showed a genuine dispute about her employer's motive by providing circumstantial evidence that retaliation was the but-for cause of her termination).

Here, the record evidence creates a genuine dispute of fact as to whether WCSA terminated the plaintiff for his reports about Cole's sexual misconduct, notwithstanding the infractions that he committed as set forth in his termination letter. A jury could conclude that WCSA acted with retaliatory animus by looking to Cornett and Cheek's flawed investigation of the plaintiff's accusations, the fear and history of retaliation at WCSA for reporting Board of Commissioners members' relatives, and the close temporal proximity between the plaintiff's allegations and his termination.

A jury could reasonably infer retaliatory animus from Cornett and Cheek's investigation which overlooked or ignored evidence of Cole's widespread sexual misconduct. Cornett and Cheek designed and executed an investigation that did not yield a single witness to corroborate Cole's sexual harassment, yet Cole's conduct was so widespread that "[a]ll the women talked about it," "[e]verybody kind of knew" and it was "common knowledge." Ball Dep. 9, ECF No. 29. Indeed, Cornett

never asked Jennifer Ball or other women who worked in the Administration Building whether Cole had ever spoken to or touched them inappropriately, even though they were the subjects of Cole's reported sexually explicit comments. Since Cole had only come to the water plant four to six times during the fourteen years that the plaintiff worked there and would only "pop[] in" and out, it begs the question why Cornett and Cheek didn't interview employees who saw Cole more regularly or who worked at other WCSA locations, like the Administration Building. Fields Dep. 48, ECF No. 20-1. These omissions in Cornett and Cheek's investigation could allow a jury to infer retaliatory intent to the extent it suggests that they cut corners to protect Cole, protect WCSA, or to discredit the plaintiff.

A jury could also reasonably find that WCSA terminated the plaintiff in retaliation based on Jennifer Ball's testimony that speaking out against relatives of Board members would result in discipline, termination, or forced resignation. Specifically, they could credit Ball's testimony that she had feared being written up or terminated if she told someone about Cole's sexual harassment because she "was told to be very careful" about whose family members were on the Board of Commissioners and she knew that Cole's uncle was a member. Ball Dep. 9, ECF No. 29. A jury could also infer from Ball's testimony that Wayne Smith's resignation and Mark Osborne's termination after they participated in the

investigation evidences a culture of retaliation.  *Id*. at 24.  This is probative for showing that the plaintiff was fired for making the complaint.[3]

The defendant declines to engage with Ball's testimony of Cole's repeated unwanted touches and sexually explicit comments, merely casting all her testimony as irrelevant "[b]ecause Fields never reported Cole's alleged harassment."  Reply Br. Supp. Mot. Summ. J. 3, ECF No. 33.  To the contrary, Ball's testimony could lead a jury to conclude that Cornett and Cheek conducted a shoddy investigation which failed to capture victims like her whom Cole reportedly touched and harassed. The jury could make the reasonable inference that investigating Cole's sexual harassment of women but not interviewing women employees at the Administration Building like Ball was done to protect Cole, or to silence, discredit, or retaliate against the plaintiff.  Accepting this motive as true makes it more likely that WCSA terminated the plaintiff for making the report.  Although the defendant has proffered several rationales for why Cheek and Cole declined to cast a wider net for the investigation, their motives and any inferences to be taken therefrom are for a jury to decide.

Another potential indicium of retaliatory animus is the temporal proximity between when the plaintiff accused Cole of sexual harassment to the Board of

---

[3]  WCSA's argument that Smith and Osborne were not similarly situated to the plaintiff lacks merit, because they all participated in bringing Cole's sexual misconduct to light.

Commissioners and when he was fired.  The plaintiff was terminated on October 23, 2018, roughly seven weeks after he initially made his complaint with Cornett.  To be sure, this approaches a duration which the Fourth Circuit has found "weaken[s] significantly the inference of causation."  *King*, 328 F.3d at 151 n.5 (roughly ten weeks).

The plaintiff argues that WCSA's written warning on October 4, 2018, evidences intervening retaliatory animus before his ultimate termination because WCSA did not discipline other employees who committed similar infractions.  *See Lettieri*, 478 F.3d at 650 (Where "temporal proximity between protected activity and allegedly retaliatory conduct is missing, courts may look to the intervening period for other evidence of retaliatory animus.").  But it would be unwarranted to infer intervening animus for this reason because the record does not indicate what disciplinary measures, if any, that WCSA took against such other employees.  *Adams v. Am. Optical Corp.*, 979 F.3d 248, 255 (4th Cir. 2020) (stating that to defeat summary judgment "[t]he record must . . . permit the conclusion that reasonable minds could differ" on the disputed issue).

Nevertheless, a jury could reasonably infer causation from the shorter two-week duration beginning when the plaintiff first gave the Board written notice of Cole's sexual harassment.  The plaintiff wrote the October 9, 2018, grievance letter to the Board that specifically accused Cole of sexual harassment and was fired

fourteen days later on October 23, 2018.  Grievance Letter, ECF No. 20-13.  This grievance letter was the first time that the Board had received written notice of Cole's "sexual harassment" based on the record presented to me.  *Id*.; *see Libertarian Party of Va.*, 718 F.3d at 312 (all justifiable inferences are due the nonmovant). Indeed, Cornett's earlier September 5, 2018, CCD letter had palliated this allegation by merely describing it as Cole "talk[ing] about what he would like to do to the[ ]" women who called from the office.  Mem. Supp. Mot. Summ. J. Ex. 5, CCD Letter September 5, 2018, ECF No. 20-5.  A jury could find that a period of two weeks between the plaintiff's written notice of Cole's sexual harassment to the Board and his termination is probative of retaliation.

In sum, there is a genuine dispute about whether the defendant's stated reasons for terminating the plaintiff were pretextual.  A jury could reasonably conclude that retaliation was the but-for cause of the plaintiff's termination by considering the close temporal proximity between the plaintiff's written accusation and his termination, the flawed investigation of Cole's conduct, and testimony about the fear and history of retaliation at WCSA for reporting relatives of the Board of Commissioners.  Therefore, summary judgment is not appropriate.

IV.

For the foregoing reasons, it is **ORDERED** that WCSA's Motion for Summary Judgment, ECF No. 19, is DENIED.

ENTER:   August 10, 2021

/s/  JAMES P. JONES
United States District Judge